UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

SEP 18 2006

CIVIL ACTION NO. 06-21

KANDI PARRETT                                                PLAINTIFF

VS.

OPINION AND ORDER

JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY                              DEFENDANT

This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 12) and the cross-motion for summary judgment of the Commissioner (Doc. 14).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001)(unreported)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. Aug. 16, 2001)).

In order to qualify for disability benefits, a claimant must establish that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines

1

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate she suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then plaintiff is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. Id. Lastly, even if the claimant cannot perform her past

2

relevant work, she is not disabled if she can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the ALJ's decision, claimant was twenty-eight years old. Claimant has an eleventh grade education, and has prior relevant work as a restaurant worker, nurse's aid and telemarketer. She has not worked since March 21, 2001.

The plaintiff's chief complaint is of back pain. She also asserts that her right knee periodically gives out on her and her hip locks. The plaintiff is 5'6" tall and weighs 285 pounds.

Plaintiff has undergone three MRIs of her lumbar spine. Two of the MRIs revealed a prominent disc herniation at L1-2 that produced moderate to severe canal stenosis, and central protrusions at L2-3, L3-4, and L5-S1 that resulted in lesser degrees of central canal stenosis and compressions of the thecal sac. The third MRI, performed nine months later, showed spinal stenosis of moderate severity, a minor central disc protrusion at L1-L2 and L4-L5, a severely degenerated disc space at the L5-S1, but no evidence of an associated disc herniation at L5-S1. The plaintiff has not undergone surgery for her back pain.

The ALJ held two evidentiary hearings on this application to ensure the record contained complete medical and psychological

3

evaluations. During the first hearing the ALJ sought testimony from the claimant and Doctor Randolph, an occupational physician. At the second hearing, the ALJ sought testimony from the claimant, Doctor Watson, board certified in physical medicine rehabilitation, and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite 5 step evaluation for determining disability.

At step one, the ALJ determined that the claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the "claimant's lumbar degenerative disc disease, obesity, chronic pain syndrome, depression and attention deficit hyperactivity disorder" are "severe" impairments.

At step 3, the ALJ determined that, although claimant has impairments that are "severe," she does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found the claimant is unable to perform her past relevant work.

At step 5, the ALJ found that the claimant has a residual functional capacity to:

> lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can stand and/or walk for two hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She must be allowed to alternate positions every 30 minutes. She is unable to reach overhead with her right arm. She can bend, stoop, kneel, and crouch occasionally. She is unable to climb or crawl. Any job the claimant could perform must be simple, routine, repetitive, low-stress, and involve only slight interaction with coworkers and supervisors.

(AR p. 28). The vocational expert opined that given claimant's

4

age, education, work history and the limitations assigned by the ALJ, that a significant number of jobs existed in the national economy that the claimant could perform. Based on this testimony, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred in not giving appropriate weight to the medical opinion of her treating physician, Dr. Burte. The claimant points out that both testifying physicians agreed that there was clear objective evidence that the claimant has a back condition, which was substantiated by the objective evidence set forth in three separate MRIs. Therefore, she argues that since objective evidence substantiates Dr. Burte's findings, his opinion should have been given controlling weight.

The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well - supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

The claimant asserts that the ALJ did not give sufficient weight to Dr. Burte's assessment. The ALJ, however, gave sufficient reasons to support his finding that although claimant suffers from a back condition, Dr. Burte's functional limitations were too restrictive and, therefore, not entitled to great

5

weight. The ALJ stated:

> Little weight is given to the assessment at Exhibit 11F, pages 2-4, even though it is from a treating physician. It gives the claimant limitations far in excess of what is warranted by the objective evidence. For example, it limits the clamant to standing for no longer than 1 hour in an eight-hour workday. Limitations of this extent are inconsistent with a back disorder that has not required surgery. Furthermore, the recent examinations in September and November 2004 revealed no signs of lumbosacral radiculopathy or acute neurologic deficits. (Exhibit 16F, pages 20-24). Additionally, the claimant was able to walk on heels and toes, tandem walk, and squat with no difficulty when examined by Dr. Kidd in July 2002 (Exhibit 7F). She could also bend at the waist to 90 degrees at his examination.

(AR p. 24).

Plaintiff argues that the two medical consultants that testified at the hearings admitted that the MRIs provided objective medical evidence of claimant's back pain. She then jumps to the conclusion that Dr. Burte's assessment should, therefore, be adopted. Although the consultants agree there is objective medical evidence to support her claim of back pain, they did not agree with Dr. Burte's severe restrictions. The ALJ reviewed the medical records and found Dr. Burte's opinion that the claimant should not sit or stand for more than one hour each in an eight-hour workday was not supported by the evidence.

Furthermore, the AlJ also found such limitations were not supported by claimant's testimony. The ALJ stated:

> [T]he claimant's allegations of disabling impairments are not entirely credible. There are several glaring inconsistencies in this case. Perhaps the greatest inconsistency is the claimant's treatment, or rather, the lack thereof. She alleges a disabling back disorder, yet she has never undergone physical therapy or surgery for this impairment (Exhibit 16F, page 19). Furthermore, she alleges that her pain can reach as high as 10 on a scale of 1-10,

6

with 10 being the highest level of pain (Exhibit 11F, page 19). However, pain of that magnitude would require hospitalization, and the file does not contain evidence of emergency hospitalization due to unbearable pain. The EMG's undergone by the claimant have shown no signs of radiculopathy, polyneuropathy, or denervation (Exhibit 16F, pages 2-3; Exhibit 12F, pages 4-5).

Also, some of the claimant's behavior is inconsistent with allegations of disabling musculoskeletal impairments. She alleges being unable to work due to her back disorder as of March 2001 (Exhibit 2E, page 2). However, it was noted in September 2001 that she 'jumped out of her car and beat up two people last week' (Exhibit 14F, page 14). Furthermore, she told Dr. Little in April 2004 that she had a history of getting into fights with people, and that she recently received an eviction notice due to this behavior (Exhibit 13F, page 2). That the claimant is able to get into physical altercations with others, and in the 2001 example, is apparently able to win the fights, is markedly inconsistent with allegations of a disabling back disorder.

. . .

Finally, the claimant's examinations do not support allegations of disabling back problems. When examined in September 2004, she could easily bend forward and touch her toes. She could also stand on her heels and toes. There were no clear findings to suggest lumbosacral radiculopathy (Exhibit 16F, page 20). No acute neurologic deficits were noted when she was examined in November 2004 (Exhibit 16F, page 24).

The claimant's impairments have clearly had a significant impact on her functioning, but it seems apparent that the claimant has exaggerated that impact. However, some of her subjective allegations are credible, and the credible portions are reflected in the residual functional capacity shown below. The residual functional capacity completed by the undersigned gives the claimant the benefit of the doubt whenever possible regarding her subjective allegations.

(AR pp. 25-26)

The court finds that the ALJ articulated clear reasons why he discredited treating physician Dr. Burte's assessment: he did not find the treating physician's overly restrictive physical capacity assessment to be consistent or supported by the record.

7

The court finds that the ALJ stated acceptable reasons for finding Dr. Burte's assessment was not entitled to great weight.

The court further notes that both of the consulting physicians that performed RFC assessments of the claimant as well as the two testifying physicians found that the claimant could perform at a higher physical level than found by the ALJ. (AR 199-214, 422-24, 442-43). The Court finds the ALJ reviewed the medical evidence, considered claimant's testimony and properly assessed claimant's functional capacity.

After assessing the claimant's RFC, the ALJ sought the assistance of a vocational expert (VE) to determine if claimant could perform past relevant work. The VE testified that based upon the RFC provided by the ALJ, the claimant would not be capable of performing his past relevant work.

Accordingly, the ALJ moved to the last step of the analysis to determine whether the claimant could perform other work which existed in significant numbers in the national economy. The VE testified that given the RFC as outlined by the ALJ the claimant could perform work at the sedentary level as a cashier/order clerk, 900 jobs locally and 145,540 jobs nationally, bookkeeper, 600 jobs locally and 87,075 jobs nationally and as a investigator/adjuster, 375 jobs locally and 48,430 jobs nationally. Based upon this evidence, the ALJ found claimant retained the capacity for work that exists in significant numbers in the national economy and, therefore, was not disabled under the Act.

8

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 12) be, and it hereby is, **denied** and the cross motion for summary judgment of the defendant (Doc. 14) be, and it hereby is, **granted**. That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

This 18th day of September, 2006.

_William O. Bertelsman_

**WILLIAM O. BERTELSMAN, JUDGE**